IN THE UNITED STATES DISRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | |
|---|---|
| **Dwayne Childers** | CASE NO. |
| 9767 Salem Warren Rd | |
| Salem, OH 44460 | JUDGE |
| | |
| Plaintiff, | |
| | |
| v. | **COMPLAINT** |
| | **WITH JURY DEMAND** |
| **Wells Fargo Home Mortgage** | |
| a division of **Wells Fargo Bank, N.A.** | |
| c/o John G. Stumpf, CEO | |
| 420 Montgomery Street | |
| San Francisco, CA 94104 | |
| | |
| Defendant. | |

Now comes Plaintiff Dwayne Childers ("Childers"), by and through counsel, and hereby states for his Complaint against Defendant Wells Fargo Home Mortgage, a division of Wells Fargo Bank, N.A., as follows:

### PARTIES, JURISDICTION, AND VENUE

1.     Plaintiff Dwayne Childers ("Plaintiff" or "Mr. Childers") is the borrower on an adjustable rate note, dated February 25, 2004.  This Note is secured by a mortgage upon the real property located at 9767 Salem Warren Road, Salem, OH 44460 (the "Property").

2.     At all times relevant, Plaintiff has occupied the Property as his primary, principal residence.

3.     Defendant Wells Fargo Home Mortgage ("Defendant" or "Wells") is a Division of Wells Fargo Bank, N.A.

4.      Defendant Wells Fargo Bank, NA ("Wells Fargo") is a National Bank incorporated business under the laws of the State of Delaware that maintains its principal place of business at 101 N. Phillips Ave., Sioux Falls, SD 57104.

5.      Wells Fargo is a "mortgage servicer" as that term is defined under applicable Federal Statute. Wells Fargo is a "creditor" as that term is defined under the applicable Federal Statute.  Wells Fargo was the servicer of the Plaintiff's note and mortgage on real property that allegedly secures the note (collectively referred to hereinafter as the "loan").

6.      This Court has jurisdiction pursuant to 28 U.S.C. §1331 as this action arises under the Dodd-Frank Wall Street Reform and Consumer Protection Act (DFA), the Real Estate Settlement Procedures Act, 12 U.S.C. §§ 2601, *et seq.* (RESPA), and the Fair Debt Collection Practices Act, 15 U.S.C. §1692.

7.      This action is specifically filed in part to enforce regulations promulgated by the Consumer Finance Protection Bureau (CFPB) that became effective on January 10, 2014, specifically, 12 C.F.R. § 1024.17 and 12 C.F.R. § 1024.41 of Regulation X.

8.      This Court has supplemental jurisdiction to hear any and all state law claims pursuant to 28 U.S.C. § 1367.

9.      Venue lies in this District pursuant to 28 U.S.C. § 1391(b) as Plaintiff currently maintains the Property as Plaintiff's primary, principal residence and has so maintained the Property as such at all other times relevant to the instant matter.

<u>INTRODUCTION</u>

10.     Plaintiff restates and incorporates herein all of the statements and allegations contained in the preceding paragraphs in their entirety, as if fully rewritten.

11.     In January 2013, the CFPB issued a number of final rules concerning mortgage markets in the United States, pursuant to the DFA, Public Law No. 111-203, 124 Stat. 1376 (2010).

12.     Specifically, on January 17, 2013, the CFPB issued the RESPA (Regulation X) Mortgage Servicing Final Rules, 78 F.R. 10695 (Regulation X) (February 14, 2013), and TILA (Regulation Z) Mortgage Servicing Final Rules, 78 F.R. 10901 (February 14, 2013), which became effective on January 10, 2014.

13.     The Loan in the instant matter is a "federally related mortgage loan" as said term is defined by 12 C.F.R. § 1024.2(b).

14.     Defendant is subject to the aforesaid Regulations and does not qualify for the exception for "small servicers", as such term is defined in 12 C.F.R. §1024.41(e)(4)

15.     Plaintiff is asserting a claim for relief against Defendant for breach of the specific rules under Regulations X as set forth below, and for violations of the Fair Debt Collection Practices Act which arise from the same actions.

16.     Plaintiff has a private right of action for the claimed breaches and such action provides for remedies including actual damages, costs, statutory damages, and

attorneys' fees under RESPA pursuant to 12 U.S.C. §2605(f), and under the Fair Debt Collection Practices Act, 15 U.S.C. § 1692(l).

### <u>BACKGROUND</u>

17.    Plaintiff restates and incorporates herein all of his statements and allegations contained in the preceding paragraphs in their entirety, as if fully rewritten.

18.    Plaintiff Dwayne Childers ("Plaintiff" or "Mr. Childers") is the borrower on an adjustable rate note, dated February 25, 2004.  This Note is secured by a mortgage upon the real property located at 9767 Salem Warren Road, Salem, OH 44460.

19.    Upon information and belief, the present interest rate on the loan is 7.875%, which is more than double the rate currently offered for fixed rate mortgages.

20.    For many years, Mr. Childers has attempted to refinance his loan to a current market rate, or modify the existing loan to a current market rate. The Defendant's failure to properly review Mr. Childers' modification requests has effectively trapped him in a mortgage at nearly double the current market rate, resulting in an unaffordable payment for Childers, but a highly profitable loan for Wells.

21.    As is relevant to this Complaint, Childers submitted a request for mortgage assistance to Wells Fargo Home Mortgage on or around July 1, 2015.

22.    Wells acknowledged receipt of that application on July 10, 2015.  *See Exhibit A, "Important Information about your Request for Mortgage Assistance."*

23.    Wells did not request any missing, supplemental, or corrective information or documentation from Childers by and through the correspondence acknowledging receipt of Childers' request for mortgage assistance, and Childers' application was therefore deemed to be "facially complete" per the plain language of 12 C.F.R. §1024.41(c)(2)(iv)

24.    On July 23, 2015, Defendant sent a letter to Childers requesting additional documents.    *See Exhibit B, "Important Next Steps for your loan modification request."* Because these additional documents were requested by Defendant after Defendant had acknowledged the initial loss mitigation request, the request was at all times deemed complete for purposes of the prohibition against dual tracking contained at 12 C.F.R. §1024.41(f)(2). Childers submitted the requested documents to Defendant.

25.    In the course of processing that application, Defendant ordered an appraisal of the property, and notified Childers of that valuation on September 25, 2015. *See Exhibit C, "re: Loan Number 0418066742."*

26.    Critically, Wells sent Childers a letter dated October 19, 2015, in which Defendant stated that it had received Childers' request, and that it would review that request and notify Childers if any additional documents were needed. *See Exhibit D, "Acknowledging receipt of your documentation supporting your request for mortgage assistance."*

27.    Despite having received the documents requested of Mr. Childers, and despite acknowledging that a loss mitigation review was ongoing, Wells filed or

caused to be filed a foreclosure action in the Court of Common Pleas of Mahoning County, Ohio, on that very same day, October 19, 2016, as Case No. 15-CV-2774. *See Exhibit E, "Complaint in Foreclosure and in reformation of deed."*

28.     After filing the foreclosure action, Defendant notified Childers on October 20, 2015 of additional documents needed, and demanded that those documents be provided by January 18, 2016. *See Exhibit F, "Important Next Steps for your loan modification request."*

29.     Childers sent Defendant the requested documents, and Wells acknowledged receipt on October 22, 2015. *See Exhibit G, "Important Information about your request for a loan modification."*

30.     On October 30, 2015, Wells notified Childers that the only remaining document needed was a quit claim deed, which Childers had already provided. *See Exhibit H, "Important next steps for your loan modification request."*

31.     Despite having expressly stated that supporting documents must be received by January 18, 2016, (*See Exhibit F*), Wells terminated the loss mitigation review on December 10, 2016. *See Exhibit I, "The review of your loan for assistance options."*

32.     Wells improperly filed a foreclosure action while a facially complete loss mitigation application was pending.

33.     Wells failed to properly review Childers' request for mortgage assistance by notifying Childers that supporting documents must be received by Wells no later

than January 18, 2016, but then closing the file more than a month prior to that deadline.

34. On or about July 19, 2016, Childers sent Wells a Request for Information pursuant to 12 C.F.R. § 1024.36 (the "RFI").  A copy of the RFI is attached as *Exhibit J.*

35. On or about July 19, 2016, Childers sent Wells a Request for a Payoff Statement for the loan pursuant to 12 C.F.R. § 1026.36 (the "Payoff Request").  A copy of the Payoff Request is attached as *Exhibit K.*

36. Wells received the RFI on or about July 23, 2016.  A copy of the tracking information for the RFI obtained from the website for the United States Postal Service is attached as *Exhibit L.*

37. Wells received the Payoff Request on or about July 23, 2016.  A copy of the tracking information for the Payoff Request obtained from the website for the United States Postal Service is attached as *Exhibit M.*

38. Defendant responded to the RFI on August 8, 2016.

39. Defendant's response to the RFI was deficient because Defendant failed to provide the servicing notes, any broker price opinions or other valuations, the last two escrow account analyses, and fails to indicate whether or not Wells had ever received a complete loss mitigation application from Mr. Childers as was requested by and through the RFI.

40. On or about August 23, 2016, as Plaintiff had not yet received a response to the Payoff Request, Plaintiff sent correspondence captioned as "Notice of Error

under 12 C.F.R. § 1024.35(b)(6) for failing to respond to a borrower's Request for Information issued pursuant to 12 C.F.R. § 1024.36 and 12 C.F.R. § 1026.36(c)(3) by providing a payoff statement for the loan in a timely manner" to Wells ("NOE #1"). A copy of NOE #1 is attached as *Exhibit N*.

41.     Wells received NOE #1 on or about August 29, 2016. A copy of the tracking information for the Payoff Request obtained from the website for the United States Postal Service is attached as *Exhibit O*.

42.     On or about September 7, 2016, Wells sent a response to NOE #1 ("NOE #1 Response") to Plaintiff.  A copy of NOE #1 Response is attached as *Exhibit P*.

43.     NOE #1 Response stated that Wells "issued a payoff/reinstatement quote on August 4, 2016", but Plaintiff never did receive a copy of such a quote and has no record of receiving such; moreover, a copy of the alleged payoff/reinstatement quote was not enclosed with the NOE #1 Response.  See *Exhibit P*.

44.     On or about September 22, 2016, as Defendant's response to the RFI was deficient, Plaintiff sent correspondence captioned as "Notice of Error pursuant to 12 C.F.R. §1024.35(b)(11) for failure to properly respond to a Request for Information in compliance with 12 C.F.R. §1024.36" to Wells ("NOE #2"). A copy of NOE #2 is attached as *Exhibit Q*.

45.     On or about October 4, 2016, Wells sent a response to NOE #2 ("NOE #2 Response") to Plaintiff stating that Wells was "unable to provide any further information because your current request is too broad".  A copy of NOE #2 Response is attached as *Exhibit R*.

46.     Defendant's actions have caused Childers to incur considerable expenses, including attorney fees, by being forced to defend the prematurely filed foreclosure action or risk a default judgment against him in that action.

47.     Childers has suffered from the stress, anxiety, and uncertainty of a foreclosure action that was filed while a loss mitigation review was pending.

48.     Further, Defendant's actions by causing, Wells Fargo Financial Ohio 1, Inc. to file a foreclosure action against Mr. Childers has created a permanent record of the public filing of the judicial foreclosure action which will have a negative impact on his future credit scoring and on his access to credit at a reasonable cost.

49.     Throughout this entire ordeal, Plaintiff has merely wanted to have his servicer review the loss mitigation application in a timely manner, something to which Plaintiff is entitled under federal law, so that Plaintiff could obtain a loan modification, get out of default on his loan, resume making timely, proper payments on the loan, begin to rehabilitate his credit, and most importantly, remain in his home.

50.     At the time of the filing of this Complaint, Defendant has had more than Sixteen Thousand Two Hundred Eighty (16,280) consumer complaints lodged against them nationally, specifically concerning the issue identified on the CFPB's consumer complaint database as "loan modification, collection, foreclosure" related to mortgages. Each such complaint is filed and cataloged in the CFPB's publicly accessible online database. (http://www.consumerfinance.gov/complaintdatabase/).

## COUNT ONE: VIOLATIONS OF 12 C.F.R. § 1024.41(f)(2)

## PROHIBITION AGAINST DUAL TRACKING FORECLOSURE WHILE LOSS MITIGATION IS ONGOING

51.     Childers restates and incorporates herein all of his statements and allegations contained in the preceding paragraphs in their entirety, as if fully rewritten.

52.     12 C.F.R. § 1024.41(a) explicitly provides that "[a] borrower may enforce the provisions of this section pursuant to section 6(f) of RESPA (12 U.S.C. §2605(f))".

53.     Despite having acknowledged receipt of Childers' facially complete request for loss mitigation, and despite having acknowledged that the review of that request was ongoing, Defendant filed or caused to be filed the foreclosure action on October 19, 2015.

54.     At the time that the foreclosure action was filed, Wells had not determined that Childers was not eligible for any loss mitigation option.

55.     At the time that the foreclosure action was filed, Wells had not notified Childers that he was not eligible for any loss mitigation option.

56.     At the time that the foreclosure action was filed, Wells had not notified Childers that no right to appeal was applicable, nor had Childers been informed of any right to request an appeal, nor had any appeal been denied. *See 12 C.F.R. § 1024.41(f)(2)i-iii.*

57.     Wells' actions are believed to be a pattern and practice of behavior in conscious disregard for Childers' rights.

58.     As a result of Defendant's actions, Wells Fargo is liable to Childers for actual damages, statutory damages, costs, and attorneys' fees pursuant to 12 U.S.C. §2605(f).

## COUNT TWO: VIOLATIONS OF 12 C.F.R. 1024.41(c)(2)

## INITIATING FORECLOSURE WITHOUT GIVING CHILDERS A REASONABLE OPPORTUNITY TO PROVIDE THE REQUESTED ADDITIONAL DOCUMENTS

59.     Childers restates and incorporates herein all of his statements and allegations contained in the preceding paragraphs in their entirety, as if fully rewritten.

60.     12 C.F.R. § 1024.41(a) explicitly provides that "[a] borrower may enforce the provisions of this section pursuant to section 6(f) of RESPA (12 U.S.C. §2605(f))".

61.     The October 20, 2015 letter, *Exhibit F,* informed Childers that additional documents must be submitted to Wells no later than January 18, 2016.

62.     Despite the January 18, 2016 deadline, and despite the fact that Childers had not failed to comply with any of Wells' requests, Wells sent Childers a letter on December 10, 2016, notifying him that loss mitigation was being terminated due to his failure to respond. *See Exhibit I.*

63.     Wells' actions in terminating loss mitigation more than one month prior to the deadline Wells had given to Childers to submit supporting documents denied Childers a reasonable time to provide the requested documents, in violation of 12 C.F.R. § 1024.41(c)(2)(ii)

64.     Wells' actions in terminating loss mitigation were in violation of 12 C.F.R. § 1024.41(c)(2)(iv).

65.     As a result of Wells' actions, Wells is liable to Childers for actual damages, statutory damages, costs, and attorneys' fees pursuant to 12 U.S.C. §2605(f).

## COUNT THREE- VIOLATION OF 12 C.F.R. § 1024.36
## FAILURE TO FULLY RESPOND TO REQUEST FOR INFORMATION

66.     Childers restates and incorporates herein all of his statements and allegations contained in the preceding paragraphs in their entirety, as if fully rewritten.

67.     On or around July 25, 2016, Childers sent Wells a Request for Information pursuant to 12 C.F.R. § 1024.36.

68.     Defendant responded to the request on August 8, 2016.

69.     Defendant's response was deficient because Defendant failed to provide the requested servicing notes, any broker price opinions or other valuations, the last two escrow account analyses, and fails to indicate whether or not Wells had ever received a complete loss mitigation application from Mr. Childers.

70.     Defendant's actions are believed to be a pattern and practice of behavior in conscious disregard for Childers' rights.

71.     As a result of Defendant's actions, Defendant is liable to Childers for actual damages, statutory damages, costs, and attorneys' fees pursuant to 12 U.S.C. §2605(f).

## COUNT FOUR- VIOLATION OF REGULATION Z OF THE TRUTH IN LENDING ACT 12 C.F.R. § 1026.36(C)(3)- FAILURE TO PROVIDE PAYOFF

59.     Childers restates and incorporates herein all of his statements and allegations contained in the preceding paragraphs in their entirety, as if fully rewritten.

60.     12 C.F.R. 1026.36(c)(3) provides that, in connection with a consumer credit transaction secured by a consumer's dwelling, a servicer must provide "an accurate statement of the total outstanding balance that would be required to pay the consumer's obligation in full as of a specified date" "within a reasonable time, but in no case more than seven business days, after receiving a written request from the consumer or any person acting on behalf of the consumer."

61.     Defendant failed to provide a payoff statement for the Loan to Childers within seven (7) business days of Childers having sent the written request for the payoff amount.

62.     Defendant's actions in failing and/or refusing to provide the payoff statement, as requested in writing, constitute a clear and willful violation of 12 C.F.R. §1026.36(c)(3).

63.     As a result of Defendant's actions, Defendant is liable to Childers for actual damages, statutory damages in an amount not to exceed $4,000.00, plus costs, and attorneys' fees.

## COUNT FIVE- VIOLATION OF 12 C.F.R. § 1024.35
## FAILURE TO PROPERLY RESPOND TO NOE #1

72.    Childers restates and incorporates herein all of his statements and allegations contained in the preceding paragraphs in their entirety, as if fully rewritten.

73.    12 C.F.R. §1024.35(a) provides that a "servicer shall comply with the requirements of this section for any written notice from the borrower that asserts an error and that includes the name of the borrower, information that enables the servicer to identify the borrower's mortgage loan account, and the error the borrower believes has occurred."

74.    Comment 1 of the CFPB's Official Interpretations of 12 C.F.R. §1024.35(a) provides that "[a] notice of error is submitted by a borrower if the notice of error is submitted by an agent of the borrower."

75.    12 C.F.R. §1024.35(e)(1) provides that a servicer must respond to a notice of error by either "[c]orrecting the error or errors identified by the borrower and providing the borrower with a written notification of the correction, the effective date of the correction, and contact information, including a telephone number, for further assistance" or "[c]onducting a reasonable investigation and providing the borrower with a written notification that includes a statement that the servicer has determined that no error occurred, a statement of the reason or reasons for this determination, a statement of the borrower's right to request documents relied upon by the servicer in reaching its determination, information regarding how the

14

borrower can request such documents, and contact information, including a telephone number, for further assistance."

76.     12 C.F.R. § 1024.35(e)(3)(i)(A) states that a servicer must respond to a notice of error in compliance with 12 C.F.R. § 1024.35(e)(1) "[n]ot later than seven days (excluding legal public holidays, Saturdays, and Sundays) after the servicer receives the notice of error for errors asserted under paragraph (b)(6) of this section".

77.     On or about August 23, 2016, as Plaintiff had not yet received a response to the Payoff Request, Plaintiff sent NOE #1 to Wells. See *Exhibit N.*

78.     On or about September 7, 2016, Wells sent NOE #1 Response.   See *Exhibit P.*

79.     NOE #1 Response stated that Wells "issued a payoff/reinstatement quote on August 4, 2016", but Plaintiff never did receive a copy of such a quote and has no record of receiving such; moreover, a copy of the alleged payoff/reinstatement quote was not enclosed with the NOE #1 Response.  See *Exhibit P.*

80.     NOE #1   Response was insufficient to comply with 12 C.F.R. §1024.35(e)(1)(i)(A) because at no point did it state that Wells had "[c]orrect[ed] the error or errors identified by the borrower and provid[ed] the borrower with a written notification of the correction, the effective date of the correction, and contact information, including a telephone number, for further assistance" as the error had still not been corrected as Plaintiff has still not received a payoff/reinstatement quote. See *Exhibit P.*

81.     NOE #1 Response was insufficient to comply with 12 C.F.R. §1024.35(e)(1)(i)(B) because while it implicitly stated that Wells determined that no error occurred, it is clear that Wells failed to perform a reasonable investigation into the alleged errors because had such a reasonable investigation been performed it would have been apparent that Plaintiff did not receive the alleged payoff/reinstatement quote and that such a quote had still not been provided by and through NOE #1 Response.  See *Exhibit P*.

82.     Wells' actions, in provide a proper response to NOE #1 in compliance with the express requirements of 12 C.F.R. §1024.25(e)(1), constitute a willful, clear, and material violation of 12 C.F.R. §1024.35(e).

83.     Wells' actions are believed to be a pattern and practice of behavior in conscious disregard for the Plaintiff's rights.

84.     As a result, Wells is liable to Plaintiff for actual damages, as described, *supra*, as well as for statutory damages, costs, and attorneys' fees.

## COUNT SIX- VIOLATION OF 12 C.F.R. § 1024.35
## FAILURE TO FULLY RESPOND TO NOE #2

85.     Childers restates and incorporates herein all of his statements and allegations contained in the preceding paragraphs in their entirety, as if fully rewritten.

86.     12 C.F.R. §1024.35(a) provides that a "servicer shall comply with the requirements of this section for any written notice from the borrower that asserts an error and that includes the name of the borrower, information that enables the

servicer to identify the borrower's mortgage loan account, and the error the borrower believes has occurred."

87.    Comment 1 of the CFPB's Official Interpretations of 12 C.F.R. §1024.35(a) provides that "[a] notice of error is submitted by a borrower if the notice of error is submitted by an agent of the borrower."

88.    12 C.F.R. §1024.35(e)(1) provides that a servicer must respond to a notice of error by either "[c]orrecting the error or errors identified by the borrower and providing the borrower with a written notification of the correction, the effective date of the correction, and contact information, including a telephone number, for further assistance" or "[c]onducting a reasonable investigation and providing the borrower with a written notification that includes a statement that the servicer has determined that no error occurred, a statement of the reason or reasons for this determination, a statement of the borrower's right to request documents relied upon by the servicer in reaching its determination, information regarding how the borrower can request such documents, and contact information, including a telephone number, for further assistance."

89.    On or about September 22, 2016, as Defendant's response to the RFI was deficient, Plaintiff sent NOE #2 to Wells. See *Exhibit Q*.

90.    On or about October 4, 2016, Wells sent NOE #2 Response.  See *Exhibit R*.

91.    NOE #2 Response stated that Wells was "unable to provide any further information because your current request is too broad".  See *Exhibit R*.

92.     NOE #2 Response was insufficient to comply with 12 C.F.R. §1024.35(e)(1)(i)(A) because at no point did it state that Wells had "[c]orrect[ed] the error or errors identified by the borrower and provid[ed] the borrower with a written notification of the correction, the effective date of the correction, and contact information, including a telephone number, for further assistance" as the error had still not been corrected as Wells has still not provided all of the information requested by and through the RFI. See *Exhibit R*.

93.     NOE #2 Response was insufficient to comply with 12 C.F.R. §1024.35(e)(1)(i)(B) because while it implicitly stated that Wells determined that no error occurred, it is clear that Wells failed to perform a reasonable investigation into the alleged errors because had such a reasonable investigation been performed it would have been apparent that Plaintiff's objections in the response to the RFI and in NOE #2 Response were wholly inappropriate and that the information by and through the RFI should have been provided.   See *Exhibit R*.

94.     Wells' actions, in provide a proper response to NOE #2 in compliance with the express requirements of 12 C.F.R. §1024.25(e)(1), constitute a willful, clear, and material violation of 12 C.F.R. §1024.35(e).

95.     Wells' actions are believed to be a pattern and practice of behavior in conscious disregard for the Plaintiff's rights.

96.     As a result, Wells is liable to Plaintiff for actual damages, as described, *supra*, as well as for statutory damages, costs, and attorneys' fees.

## COUNT SEVEN: 15 USC §1692, *et al.*

64.     Childers restates and incorporates herein all of his statements and allegations contained in the preceding paragraphs in their entirety, as if fully rewritten.

65.     By conducting mortgage collection activity through its subsidiary, Wells Fargo Home Mortgage, Wells Fargo Bank, N.A. is a "Debt Collector" subject to liability under the Fair Debt Collection Practices Act, 15 U.S.C. § 1692(b), in that "the term includes any creditor who, in the process of collecting his own debts, uses any name other than his own which would indicate that a third person is collecting or attempting to collect such debts."

66.     15 USC §1692f(1) prohibits "The collection of any amount (including any interest, fee, charge, or expense incidental to the principal obligation) unless such amount is expressly authorized by the agreement creating the debt or permitted by law."

67.     By filing the foreclosure action despite the prohibition against dual tracking imposed by *12 C.F.R. § 1024.41(f)(2)i-iii.,* Wells attempted to collect an amount not authorized by the agreement or permitted by law.

68.     By filing the foreclosure action despite the prohibition against dual tracking imposed by *12 C.F.R. § 1024.41(f)(2)i-iii.,* Wells used unfair or unconscionable means to attempt to collect a debt, in violation of 15 U.S.C. §1692g.

69.     Terminating the loss mitigation review more than one month prior to the deadline Wells had given to Childers to provide additional documents rendered

19

the foreclosure action an unfair or unconscionable means to attempt to collect a debt in violation of in violation of 15 U.S.C. §1692g.

70.     As a result of Wells' actions, Wells is liable to Childers for actual damages, statutory damages, costs, and attorneys' fees pursuant to 15 USC §1692l.

## PRAYER FOR RELIEF

**WHEREFORE,** Plaintiff prays that this Court enter its order granting judgment for the following:

A.)     For actual damages in an amount in excess of Forty-Five Thousand Dollars ($45,000.00), including attorney fees and costs incurred in defending the improper and premature foreclosure action.

B.)     For statutory damages in the amount of Two Thousand Dollars ($2,000.00) as to each of Counts One through Three and Counts Five and Six for a total of Ten Thousand Dollars ($10,000.00).

C.)     For statutory damages in the amount of Four Thousand Dollars ($4,000.00) as to Count Four.

D.)     For statutory damages in the amount of: One Thousand Dollars ($1,000.00) as to Count Seven.

E.)     Attorney fees and costs for this action as allowed by statute,

F.)     Such other relief which this Court may deem appropriate.

Respectfully submitted,

/s/ William C. Behrens
Marc E. Dann (0039425)
Daniel M. Solar (0085632)
William C. Behrens (0093031)
THE DANN LAW FIRM CO., L.P.A.
P.O. Box 6031040
Cleveland, OH  44103
Telephone: (216) 373-0539
Facsimile: (216) 373-0536
notices@dannlaw.com

## JURY DEMAND

Plaintiff hereby requests a trial by jury on all issues, with the maximum number of jurors permitted by law.

/s/ William C. Behrens
Marc E. Dann (0039425)
Daniel M. Solar (0085632)
William C. Behrens (0093031)
THE DANN LAW FIRM CO., L.P.A.
